UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WYOMING KILLINGBARROWS,<br><br>Defendant | Criminal No. 25cr10138<br><br>Violations:<br><br>Counts One-Four: Bank Fraud<br>(18 U.S.C. § 1344)<br><br>Count Five: Money Laundering<br>(18 U.S.C. § 1957)<br><br>Bank Fraud Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(2)(A))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

INFORMATION

At all times relevant to this Information:

General Allegations

A.   Relevant Individuals and Entities

1.   Defendant, WYOMING KILLINGBARROWS ("KILLINGBARROWS") was a resident of Dedham, Massachusetts.

2.   KILLINGBARROWS' former name was Patricio Junio Brito Pontes Barros. On October 7, 2020, KILLINGBARROWS submitted a petition through United States Citizenship and Immigration Services to legally change his name from Patricio Junior Brito Pontes Barros to Wyoming Paco Yakashima KILLINGBARROWS as part of his naturalization application. The petition was approved by the United States District Court for the District of Massachusetts on October 27, 2020.

3. Pentagon Federal Credit Union was a federally insured financial institution headquartered in Virginia.

4. Berkshire Bank was a federally insured financial institution headquartered in Massachusetts.

5. North Easton Savings Bank was a federally insured financial institution headquartered in Massachusetts.

6. Direct Federal Credit Union was a federally insured financial institution headquartered in Massachusetts.

Scheme to Defraud

7. Between June 2, 2021 and July 17, 2021, KILLINGBARROWS secured multiple loans and opened lines of credit using his former name, Patricio Barros. In seeking those loans and lines of credit, KILLINGBARROWS made false claims about his annual income, and attached false and fraudulent paystubs and tax documents purporting to support the false claims about the amount and source of his annual income. Based on the submission of these fraudulent loan applications, various financial institutions approved loans and lines of credit for KILLINGBARROWS. Below is a chart of those loan applications:

| Date Opened | Financial Institution | Name on Application | Amount Received |
|---|---|---|---|
| 6/2/2021 | Pentagon Federal Credit Union | Patricio Barros | $20,000 |
| 6/3/2021 | KeyBank | Patricio Barros | $25,000 |
| 6/5/2021 | HSBC | Patricio Barros | $20,000 |
| 6/7/2021 | Eastern Bank | Patricio Barros | $21,000 |
| 6/8/2021 | Freedom Plus | Patricio Barros | $19,002 |
| 6/12/2021 | Goldman Sachs | Patricio Barros | $30,000 |
| 6/14/2021 | Berkshire Bank | Patricio Barros | $20,000 |
| 6/14/2021 | Citibank | Patricio Barros | $15,000 |
| 6/14/2021 | Village Bank | Patricio Barros | $30,000 |
| 6/18/2021 | HarborOne | Patricio Barros | $10,000 |
| 6/18/2021 | North Easton Savings Bank | Patricio Barros | $20,000 |

| 6/21/2021 | Santander Bank | Patricio Barros | $35,000 |
| 6/23/2021 | Cambridge Savings Bank | Patricio Barros | $10,000 |
| 6/23/2021 | Middlesex Savings Bank | Patricio Barros | $10,000 |
| 6/25/2021 | Direct Federal Credit Union | Patricio Barros | $25,000 |
| 6/25/2021 | HSBC | Patricio Barros | $2,000 |
| 7/13/2021 | Workers Credit Union | Patricio Barros | $15,000 |
| 7/17/2021 | Digital Federal Credit Union | Patricio Brito Barros | $2,000 |

8. In total, KILLINGBARROWS obtained over $329,000 as a result of the fraudulent scheme.

A. Pentagon Federal Credit Union Fraud

9. In furtherance of the scheme, on or about June 2, 2021, KILLINGBARROWS applied for a $20,000 loan from Pentagon Federal Credit Union using the name Patricio Barros.

10. In support of this application, KILLINGBARROWS submitted fraudulent paystubs from a company where he claimed to be employed and misrepresented his income from that company. The Employer Identification Number ("EIN") on the purported paystubs that KILLINGBARROWS submitted is different from the EIN that was issued by the Internal Revenue Service ("IRS") to the company. The amount of income that KILLINGBARROWS claimed to be earning is well above and inconsistent with the tax filings KILLINGBARROWS submitted to the Internal Revenue Service.

11. Based on the false and fraudulent information submitted in the loan application, Pentagon Federal Credit Union approved the loan and provided a $20,000 check to KILLINGBARROWS. On June 16, 2021, KILLINGBARROWS deposited this $20,000 check into his Digital Federal Credit Union account ending 1759-1. KILLINGBARROWS made no payments on the loan.

3

B.  <u>Berkshire Bank Fraud</u>

12. In furtherance of the scheme, on or about June 10, 2021, KILLINGBARROWS applied for a $35,000 loan from Berkshire Bank using the name Patricio Barros.

13. In support of this application, KILLINGBARROWS submitted fraudulent paystubs and fraudulent W-2 tax forms to support his false claims about the amount and source of his income. The EINs on the purported paystubs and W-2 tax forms that KILLINGBARROWS submitted are different from the EIN that was issued by the IRS to the company. The amount of income that KILLINGBARROWS claimed to be earning is well above and inconsistent with the tax filings KILLINGBARROWS submitted to the Internal Revenue Service.

14. Based on the false and fraudulent information submitted in the loan application, Berkshire Bank approved the loan and provided a $20,000 check to KILLINGBARROWS. KILLINGBARROWS made no payments on the loan.

C.  <u>North Easton Savings Bank Fraud</u>

15. In furtherance of the scheme, on or about June 4, 2021, KILLINGBARROWS applied for a $20,000 loan from North Easton Savings Bank using the name Patricio Barros.

16. In support of this application, KILLINGBARROWS submitted fraudulent paystubs and fraudulent W-2 tax forms to support his false claims about the amount and source of his income. The EINs on the purported paystubs and W-2 tax forms that KILLINGBARROWS submitted are different from the EIN that was issued by the IRS to the company. The amount of income that KILLINGBARROWS claimed to be earning is well above and inconsistent with the tax filings KILLINGBARROWS submitted to the Internal Revenue Service.

17. Based on the false and fraudulent information submitted in the loan application, North Easton Savings Bank approved the loan and provided a $20,000 check to KILLINGBARROWS. KILLINGBARROWS made no payments on the loan.

D. <u>Direct Federal Credit Union Fraud</u>

18. In furtherance of the scheme, on or about June 9, 2021, KILLINGBARROWS applied for a $25,000 loan from Direct Federal Credit Union using the name Patricio Barros.

19. In support of this application, KILLINGBARROWS submitted fraudulent paystubs from a company where he claimed to be employed and misrepresented his income from that company. The EIN on the purported paystub KILLINGBARROWS submitted is different from the EIN that was issued by the IRS to the company. The amount of income that KILLINGBARROWS claimed to be earning is well above and inconsistent with the tax filings KILLINGBARROWS submitted to the Internal Revenue Service.

20. Based on the false and fraudulent information submitted in the loan application, Pentagon Federal Credit Union approved the loan and provided a $25,000 check to KILLINGBARROWS. On June 28, 2021, KILLINGBARROWS deposited this $25,000 check into his Digital Federal Credit Union account ending 1759-2. KILLINGBARROWS made no payments on the loan.

<u>Unlawful Monetary Transaction with Proceeds of the Scheme</u>

21. Between in or about June 2021 and July 2021, KILLINGBARROWS deposited the criminally-derived funds from the bank fraud scheme into his Digital Federal Credit Union accounts ending 1759-1 and 1759-2. From these accounts, KILLINGBARROWS conducted multiple transactions involving over $10,000 of criminally-derived funds that he obtained through the bank fraud scheme alleged above.

22. For example, on or about June 22, 2021, KILLINGBARROWS transferred $35,000 from KILLINGBARROWS' Digital Federal Credit Union account ending 1759-1 to KILLINGBARROWS' Digital Federal Credit Union account ending 1759-2.

23. On or about June 22, 2021, KILLINGBARROWS withdrew $70,000 in cash from KILLINGBARROWS' Digital Federal Credit Union account ending 1759-2.

24. On or about July 13, 2021, KILLINGBARROWS withdrew $103,000 in cash from KILLINGBARROWS' Digital Federal Credit Union account ending 1759-2.

COUNTS ONE - FOUR
Bank Fraud
(18 U.S.C. § 1344)

The United States Attorney charges:

25.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-20 of this Information.

26.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

WYOMING KILLINGBARROWS,

did knowingly execute and attempt to execute a scheme and artifice to defraud the federally insured financial institutions listed below, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of those institutions, by means of materially false and fraudulent pretenses, representations, and promises, in that, defendant submitted fraudulent loan applications using his prior name, making false statements about his annual income, and attaching false tax documents purporting to state his annual income, obtained loans and lines of credit as follows:

| Count | Approximate Date Loan Application Submitted | Financial Institution | Name on Application | Amount Received |
|---|---|---|---|---|
| 1 | 6/2/2021 | Pentagon Federal Credit Union | Patricio Barros | $20,000 |
| 2 | 6/10/2021 | Berkshire Bank | Patricio Barros | $20,000 |
| 3 | 6/4/2021 | North Easton Savings Bank | Patricio Barros | $20,000 |
| 4 | 6/9/2021 | Direct Federal Credit Union | Patricio Barros | $25,000 |

All in violation of Title 18, United States Code, Section 1344.

COUNT FIVE
Money Laundering
(18 U.S.C. § 1957)

The United States Attorney further charges:

27. The United States Attorney re-alleges and incorporates by reference paragraphs 1-24 of this Information.

28. On or about the date set forth below, in the District of Massachusetts and elsewhere, the defendant,

WYOMING KILLINGBARROWS,

did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, as set forth below, where such property was derived from specific unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344 as charged in Counts One and Four:

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 5 | 7/13/2021 | Cash withdrawal of $103,000 from KILLINGBARROWS' Digital Federal Credit Union account ending 1759-2. |

All in violation of Title 18, United State Code, Section 1957.

## BANK FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(2)(A))

The United States Attorney further alleges:

29. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1344, set forth in Counts One through Four, the defendant,

WYOMING KILLINGBARROWS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses. The property to be forfeited includes, but is not limited to, the following:

a. $329,002 to be entered in the form of a forfeiture money judgment.

30. If any of the property described in Paragraph 29, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 29 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

The United States Attorney further alleges:

31. Upon conviction of the offense in violation of Title 18, United States Code, Section 1957, set forth in Count Five, the defendant,

WYOMING KILLINGBARROWS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

    a. $329,002 to be entered in the form of a forfeiture money judgment.

32. If any of the property described in Paragraph 31, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 31 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

                                LEAH B. FOLEY
                                United States Attorney

                By:    */s/ Brian J. Sullivan*
                       Brian J. Sullivan
                       Assistant United States Attorney

Date: April 15, 2025